**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

Upsher-Smith Laboratories, Inc.,

Plaintiff,

v.

Pan American Laboratories, Inc., Metabolite Laboratories, Inc., Pan American Laboratories L.L.C., and Pamlab, L.L.C.,

Defendants.

**MEMORANDUM OPINION AND ORDER**
Civil No. 01-352 ADM/AJB

---

Jacob M. Holdreith, Esq., and Kimberly G. Miller, Esq., Robins, Kaplan, Miller, & Ciresi L.L.P., Minneapolis, MN, and Mark Robbins, Esq., Upsher-Smith Laboratories, Inc., Maple Grove, MN, appeared for and on behalf of Plaintiff.

Randy G. Gullickson, Esq., Anthony Ostlund & Baer, P.A., Minneapolis, MN, and Glenn K. Beaton, Esq., Gibson, Dunn & Crutcher L.L.P., Denver, CO, appeared for and on behalf of Defendants.

---

## I. INTRODUCTION

Defendant Pan American Laboratories, Inc.'s ("Defendant" or "Pan Am") Motion for Summary Judgment [Docket No. 73] and Plaintiff Upsher-Smith Laboratories, Inc.'s ("Plaintiff" or "Upsher-Smith") Motion to Strike [Docket Nos. 87, 108] were argued before the undersigned United States District Judge on October 9, 2003. Defendant moves for summary judgment and asks the Court to dismiss Count I of Plaintiff's Amended Complaint [Docket No. 3], and to declare Plaintiff's patent invalid. Because Plaintiff filed a Second Amended Complaint [Docket No. 128] while the current Motion was pending, the Court applies Defendant's Summary Judgment Motion to this more recent Complaint, as Count I remains unchanged. The Court also

FILED 12·19·03
RICHARD D. SLETTEN, CLERK
JUDGMENT ENT'D. ______
DEPUTY CLERK ______

treats Defendant's Motion as one for Partial Summary Judgment, as Plaintiff added new claims in the Second Amended Complaint. Plaintiff requests an order striking Defendant's non-infringement defense and establishing that Defendant is infringing Plaintiff's patent ("'624 patent"). For the reasons explained below, Defendant's Motion for Summary Judgment is granted and Plaintiff's Motion to Strike is denied. Additionally, Defendant is ordered to comply with the Court's Pretrial Scheduling Order of May 29, 2003 [Docket No. 66], to assign a meaning to "antioxidants" and to state whether its accused product contains "antioxidants."

## II. BACKGROUND

This dispute concerns various patents issued for vitamin supplements that contain folic acid and vitamin $B_{12}$, a combination that potentially lowers homocysteine levels in blood. Elevated amounts of homocysteine are associated with vascular diseases such as strokes and heart attacks. See Gullickson Aff. of 6/13/03 Ex. A ('624 patent). On October 17, 1995, the late Dr. Victor Herbert ("Dr. Herbert") filed a patent application that describes a vitamin supplement consisting of folic acid and vitamin $B_{12}$ that is "essentially free of antioxidants." See id. Ex. A. This formulation may also contain $B_6$, a non-antioxidant vitamin. While the folic acid-$B_{12}$ combination was known before Dr. Herbert applied for the '624 patent, the United States Patent and Trademark Office ("PTO") issued the '624 patent because it specifically excludes antioxidants from the vitamin composition. See '624 Patent col. 1, ll. 54-55, & Ex. B (Letter from Patent & Trademark Office to Olnstein of 1/22/99 at 2). The '624 patent's specification notes that antioxidants destroy some folic acid and vitamin $B_{12}$, consequently reducing the combination's efficacy. '624 Patent col. 1, ll. 54-59. The specification explains further that "essentially free" means that the vitamin supplement "must not contain an amount of

antioxidants which would tend to damage and inactivate some of the vitamin $B_{12}$ and/or folic acid of the vitamin supplement." Id. col. 2, ll. 48-57.

In September 1999, Defendant Pam Am, a pharmaceutical company, began manufacturing Foltx, a vitamin supplement that contains folic acid and vitamin $B_{12}$. See Dritsas Aff. ¶¶ 7-8. Upsher-Smith alleges that Foltx infringes the '624 patent, and initiated a patent infringement suit in February 2001.

In response, Pan Am asserts a non-infringement defense and also claims that the '624 patent is invalid, alleging that the patented composition of folic acid and vitamin $B_{12}$ that is essentially free of antioxidants existed in prior art. Id.; see also Ans. ¶¶ 70-77. This prior art includes a series of patents ("professors' patents")[1] licensed to Pan Am that were issued to two University of Colorado professors. The professors discovered that a mixture of folic acid and $B_{12}$ can reduce homocysteine and applied for their first patent concerning this invention on December 29, 1992. See Gullickson Aff. of 6/13/03 Ex. C (professors' patents). They were issued a total of five patents over the next eleven years. The abstracts for all five patents describe "[a] method for orally administering vitamin preparations . . . which combine[s] vitamin $B_{12}$ . . . and folic acid (folate) . . . for preventing and treating . . . elevated serum homocysteine . . . levels." Additionally, the patents contain claims that outline specific formulations of folate and vitamin $B_{12}$, some which add vitamin $B_6$ as well. The patents are silent regarding antioxidants. See id. The professors' patents were not disclosed during the '624 patent's prosecution, and the PTO did not review the professors' patents before issuing the '624 patent to Dr. Herbert. See id. Ex. B.

---

[1] The professors' patents include United States Patent Nos. 5,563,126; 5,795,873; 6,207,651; 6,297,224, and 6,528,496. See Gullickson Aff. of 6/13/03 Ex. C (professors' patents).

Before purchasing the '624 patent, Plaintiff Upsher-Smith unsuccessfully attempted to license the professors' patents. See Allen Decl. ¶¶ 8-14; O'Neill Aff. ¶¶ 11-13, Ex. A.

In addition to the prior art of the professors' patents, Pam Am claims that the folic acid-$B_{12}$, essentially free of antioxidants composition was also present in a European patent application ("European patent") that was published on May 4, 1994.[2] See Gullickson Aff. of 8/11/03 Ex. A (European patent). The European patent describes a vitamin supplement containing folic acid and $B_{12}$, and optionally, antioxidants. The supplement may also contain vitamin $B_6$. Id. at 18, ll. 50-55. The European patent lists some formulations that include antioxidants, and others that do not. Id. at 4, ll. 24-33, 37-44; 7, ll. 1-3; 9, ll. 9-50. Additionally, claim 23 indicates that antioxidants may be added to any of the compositions listed in claims 1-22. See id. at 21, ll. 6-8. As with the professors' patents, the PTO did not review the European patent before issuing the '624 patent, nor was it disclosed to the PTO during the '624 patent's prosecution. See Gullickson Aff. of 6/13/03 Ex. B (prosecution history).

## III. DISCUSSION

Pan Am moves for summary judgment on the issue of invalidity of claims 1, 2, 5, and 8-10 of the '624 patent. Upsher-Smith counters by moving to strike Pan Am's non-infringement defense and to establish that Pan Am is infringing the '624 patent, arguing that Pan Am has not disclosed the factual basis for its non-infringement defense as required by court order.

---

[2] The European patent application's application number is 93114762.3, and its publication number is 0595005A1. See Gullickson Aff. of 8/11/03 Ex. A (European patent).

**A. Summary Judgment Standard**

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall issue "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). On a motion for summary judgment, the court views the evidence in the light most favorable to the nonmoving party. Ludwig v. Anderson, 54 F.3d 465, 470 (8th Cir. 1995). The nonmoving party may not "rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial." Krenik v. County of Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995).

**B. Legal Framework for Invalidating Patent Claims**

Patent claims are presumed valid. 35 U.S.C. § 282. Further, each claim is "presumed valid independently of . . . other claims" and "dependent . . . claims shall be presumed valid even though dependent upon an invalid claim." Id.; see Apple Computer, Inc. v. Articulate Sys., Inc., 234 F.3d 14, 24 (Fed. Cir. 2000). This presumption can be overcome, however, by clear and convincing evidence of invalidity. See Nat'l Presto Indus., Inc. v. W. Bend Co., 76 F.3d 1185, 1189 (Fed. Cir. 1996). Claims are invalid unless they are both novel and non-obvious as required by §§ 102 and 103 of the Patent Act ("Act"). See 35 U.S.C. §§ 102-03.

**1. Novelty Requirement under § 102**

Patent claims that are anticipated by prior art fail to meet the novelty requirement of

§ 102 of the Act and are consequently invalid. See 35 U.S.C. § 102. Section 102 states the following:

> A person shall be entitled to a patent unless–
>
> (a) the invention was known or used by others in this country, or patented or described in a printed publication in this or a foreign country, before the invention thereof by the applicant for patent, or
>
> (b) the invention was patented or described in a printed publication in this or a foreign country . . . more than one year prior to the date of the application for patent in the United States, or
>
> . . . .
>
> (e) the invention was described in . . . (2) a patent granted on an application for patent by another filed in the United States before the invention by the applicant for patent . . .; or
>
> . . . .
>
> (g) . . . (2) before such person's invention thereof, the invention was made in this country by another inventor who had not abandoned, suppressed, or concealed it.
>
> 35 U.S.C. § 102.

The first step in an anticipation inquiry is to construe the allegedly invalid claims. See Trintec Indus., Inc. v. Top-U.S.A. Corp., 295 F.3d 1292, 1294 (Fed. Cir. 2002). These claims are then compared to the prior art reference. For a claim to be invalid on anticipation grounds, a single prior art reference must either expressly or inherently disclose all limitations of the claimed invention in a way that enables one "skilled in the art to make the anticipating subject matter." PPG Indus., Inc. v. Guardian Indus. Corp., 75 F.3d 1558, 1566 (Fed. Cir. 1996); see Schering Corp. v. Geneva Pharm., Inc., 339 F.3d 1373, 1377 (Fed. Cir. 2003). However, "if granting patent protection on the disputed claim would allow the patentee to exclude the public

from practicing the prior art, then that claim is anticipated, regardless of whether it also covers subject matter not in the prior art." Atlas Powder Co. v. Ireco Inc., 190 F.3d 1342, 1346 (Fed. Cir. 1999).

**2. Non-obviousness Requirement under § 103**

Valid patent claims must also be non-obvious as defined by § 103, which states the following:

> (a) A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains . . . .
>
> 35 U.S.C. § 103(a).

To establish invalidity on obviousness grounds, the moving party must show by clear and convincing evidence that all claim limitations are present in a combination of prior art references. See McGinley v. Franklin Sports, Inc., 262 F.3d 1339, 1351 (Fed. Cir. 2001). The party must also prove that motivation existed to combine these references at the time when the disputed invention was created. See Gambro Lundia AB v. Baxter Healthcare Corp., 110 F.3d 1573, 1579 (Fed. Cir. 1997) (holding that an "absence of such a suggestion to combine is dispositive in an obviousness determination"). In analyzing whether patent claims are obvious, courts should consider several factors including: (1) the scope and content of the prior art; (2) the differences between the claimed invention and the prior art; (3) the level of ordinary skill in the art; and (4) objective support of non-obviousness like commercial success and long-felt but unresolved need. See Graham v. John Deere Co., 383 U.S. 1, 17 (1966).

### C. The Allegedly Invalid '624 Patent Claims

Defendant seeks summary judgment, arguing that several claims in Plaintiff's '624 patent are invalid because they are anticipated and obvious based on prior art. Plaintiff responds that the claims are valid because the prior art, while disclosing the folic acid-$B_{12}$ formulation, did not specifically exclude antioxidants.

#### 1. Anticipation Analysis

Defendant asserts first that the '624 patent does not meet § 102's novelty requirement. The starting point in § 102 anticipation analysis is to construe the language of the disputed claims, here claims 1, 2, 5, and 8-10. See Trintec Indus., 295 F.3d at 1294. Claim 1 outlines four compositions of a vitamin supplement "consisting of" folic acid and vitamin $B_{12}$, with one formulation limited to the folic acid-$B_{12}$ combination, a second adding $B_6$, a third including a non-antioxidant vitamin, and a fourth containing additional non-antioxidant vitamins. See '624 Patent col. 4, ll. 21-31. Claim 2 states an alternative formulation to the second composition of claim 1. Id. col. 4, ll. 32-35. Claim 5 describes a vitamin supplement comprised of folic acid and B vitamins, that is essentially free of antioxidants and other vitamins, and does not include amino acids or antimicrobial agents. Id. col. 4, ll. 44-51. Finally, claims 8-10 further limit the contents of the vitamin composition and exclude nutrient minerals. Id. col. 4, ll. 60-65. The language at issue for all of these claims, "essentially free of antioxidants," is defined in the '624 patent's specification, and means that "the vitamin compound . . . must not contain an amount of antioxidants which would tend to damage and inactivate some of the vitamin $B_{12}$ and/or folic acid . . . ." Id. col. 2., ll. 53-57.

Defendant argues that the professors' patents and the European patent anticipate these

claims because both describe a vitamin supplement that contains folic acid and $B_{12}$, with some formulations adding $B_6$, that is essentially free of antioxidants. Starting with the earliest of the professors' patents, patent no. 5,563,126 ("'126 patent") clearly constitutes prior art to the '624 patent because it was filed on December 29, 1992, almost three years before the '624 patent was filed. 35 U.S.C. § 102(e); see Gullickson Aff. of 6/13/03 Exs. A & C.[3] The '126 patent is also evidence of what was "known or used by others in this country" before the '624 patent application was filed, and illustrates an invention "made in this country by another" that predates the '624 patent. See 35 U.S.C. §§ 102(a)(g); Gullickson Aff. of 6/13/03 Exs. A & C. The abstract to the '126 patent outlines a vitamin preparation that combines vitamin $B_{12}$, folic acid, and optionally vitamin $B_6$, for treatment of elevated homocysteine levels. See Gullickson Aff. of 6/13/03 Ex. C. Additionally, claim 1 describes a formulation containing cobalamin ($B_{12}$), folate (folic acid), and $B_6$. See '126 patent col. 26, ll. 46-52. Claim 5 outlines a variation that includes cobalamin ($B_{12}$) and folate (folic acid). See id. col. 26, ll. 61-63. The '126 patent does not mention antioxidants, amino acids, antimicrobial agents, or nutrient minerals. See '126 patent.

This language from the '126 patent anticipates the disputed claims in the '624 patent because it discloses all limitations of the claimed invention. First, the '126 patent describes three of the four alternative formulations of claim 1, as it teaches an antioxidant-free vitamin composition that contains (a) $B_{12}$ and folic acid, (b) $B_{12}$, folic acid, and $B_6$, and (c) $B_{12}$, folic acid,

---

[3] Defendant claims that all five professors' patents are "of such a date" that they constitute prior art to the '624 patent. See Def.'s Reply Mem. at 1. However, Defendant fails to clearly explain how patents Nos. 5,795,873, 6,207,651, 6,297,224, and 6,528,496, all filed after the '624 patent, are continuations of the original '126 application, or to link these patents to the '126 patent. Therefore, the Court limits its anticipation analysis of the professors' patents to the '126 patent.

and a non-antioxidant vitamin, $B_6$. Id.; see also Gullickson Aff. of 6/13/03 Ex. A. Claim 1 is therefore invalid, because the prior art need only anticipate one of the claim's four variations to invalidate the entire claim. See Donald S. Chisum, Chisum on Patents § 8.06[2][f] (1998) (explaining that the novelty and nonobviousness of a claim with a Markush[4] group is determined as if the claim were generic). The '126 patent similarly anticipates claim 2, because claim 2 merely limits the composition to folic acid, $B_{12}$, and $B_6$. Claim 5 is also invalid though it adds negative limitations, requiring that the composition be "essentially free of antioxidants," and excluding amino acids and antimicrobial agents. The '126 patent discloses this formulation because in describing a combination "comprised of" folic acid/ $B_{12}$/ $B_6$ combination, it does not mandate inclusion of additional ingredients. See Genentech, Inc. v. Chiron Corp., 112 F.3d 495, 501 (1997) (explaining that "[c]omprising is a term of art used in claim language which means that the named elements are essential, but other elements may be added and still form a construct within the scope of the claim."). Finally, claims 8-10, dependent on claims 1, 2, and 5 consecutively, are invalid as well. While all three add the limitation that the composition not contain nutrient minerals, the '126 patent does not require addition of this element. See Gullickson Aff. of 6/13/03 Exs. A & C.

Plaintiff argues that the '126 patent does not contain all the limitations of the '624 patent because it does not specifically exclude antioxidants or recognize the implications of their inclusion. However, nothing in the '126 patent requires adding antioxidants or any other substances besides folic acid, $B_{12}$, and optionally $B_6$. While the '126 patent uses the open-ended

---

[4] A Markush group is a type of claim that includes subgroups that provide alternative formulations of the claimed invention. See id. § 8.06[2].

"comprising" in its claims, this does not mean that the formulas it describes must include antioxidants. See Genentech, Inc at 501. The '126 patent discloses a vitamin composition whose formulation could be limited to only folic acid and $B_{12}$, or folic acid, $B_{12}$, and $B_6$. Further, that the "comprising" language allows the possible addition of other ingredients, or that the complications of adding antioxidants were not understood is irrelevant, because granting patent protection on the disputed claims in the '624 patent would "allow the patentee to exclude the public from practicing the prior art," here the vitamin formulations described in the '126 patent. See Atlas Powder Co., 190 F.3d at 1346. This is true regardless of whether the '624 patent "also covers subject matter not in the prior art." Id.

Defendant claims that the European patent also anticipates the disputed claims in the '624 patent. The European patent was published on May 4, 1994, and is therefore prior art under § 102(b), as the '624 patent application was not filed until October 17, 1995. 35 U.S.C. § 102(b); Gullickson Aff. of 8/11/03 Ex. A. The European patent specification describes a vitamin composition containing folic acid and $B_{12}$, and optionally antioxidants. One variation also includes vitamin $B_6$, and while some compositions add antioxidants, they are absent from other suggested formulations. Gullickson Aff. of 8/11/03 Ex. A at 4, ll. 24-33, 37-44; 7, ll. 1-3; 9, ll. 9-50; 18, ll. 50-55. Claim 23 states that antioxidants may be added to any of the compositions listed in claims 1-22. See id. at 21, ll. 6-8.

The European patent anticipates the '624 patent because it teaches all of the limitations in the disputed claims. First, the European patent invalidates claim 1 of the '624 patent because it discloses three of the four listed formulations. See id. at 18, ll. 50-55; 20, ll. 44-46; see also Chisum on Patents § 8.06[2][f]. The European patent also anticipates claim 2, as both describe a

variation containing folic acid, $B_{12}$, and $B_6$. Gullickson Aff. of 8/11/03 Ex. A at 18, ll. 50-55. Claim 5, which specifically excludes antioxidants, antimicrobial agents, and amino acids, is invalid as well because the European patent optionally adds antioxidants to its formulations, clearly indicating that antioxidants are not essential elements. Id. at 21, ll. 4-9. Additionally, nothing in the European patent suggests that antimicrobial agents or amino acids are necessary ingredients. Finally, the European patent also anticipates claims 8-10 because it does not require inclusion of nutrient minerals. See Gullickson Aff. of 8/11/03 Ex. A.

**2. Obviousness Analysis**

Defendant also argues that the '624 patent's disputed claims are obvious under § 103 based on prior art. This prior art includes the '126 patent and the European patent discussed above, but also numerous articles discussing vitamin supplements and antioxidants. See Gullickson Aff. of 6/13/03 Ex. E. Defendant claims these sources reveal that antioxidants harm vitamin $B_{12}$, and that $B_{12}$ is preserved by omitting antioxidants.

Based on these materials, Defendant fails to show, by clear and convincing evidence, that a person possessing ordinary skill in vitamin supplements research would know that antioxidants harm $B_{12}$ in vitamin supplements, and that antioxidants should be excluded from folic acid-$B_{12}$ compositions. See 35 U.S.C. § 103(a); Nat'l Presto Indus., 76 F.3d at 1189. Starting with the '126 patent, while it does not require including antioxidants, it does not expressly omit them either. The '126 patent therefore provides little information about potential harm or detriment from adding antioxidants to the formulation. Gullickson Aff. of 6/13/03 Ex. C. The European patent similarly does not recognize the antioxidant problem, as it specifically allows their inclusion in some formulations. Gullickson Aff. of 8/11/03 Ex. A. Several articles cited by

Defendant suggest that antioxidants break down $B_{12}$ in very specific situations. However, Defendant has not shown that one with ordinary skill in the art would understand that the same complication can occur in vitamin supplements, or that removing antioxidants is the correct method for preserving $B_{12}$. Gullickson Aff. of 6/13/03 Ex. E. This is especially true because industry practice at the time favored multi-vitamin tablets. See Holdreith Aff. Ex. 4 at 3. Further, Defendant does not provide evidence of a motivation for combining the prior art references. See Gambro Lundia AB, 110 F.3d at 1579.

While these sources do not prove that researchers fully appreciated the risks to $B_{12}$, or viewed eliminating antioxidants as a remedy for the breakdown problem, the '126 patent and the European patent do disclose the specific formulations listed in the '624 patent. See Gullickson Aff. of 6/13/03 Exs. A & C; Gullickson Aff. of 8/11/03 Ex. A. As explained in the anticipation analysis above, both patents reveal vitamin compositions containing folic acid and $B_{12}$, with some formulations including $B_6$, a non-antioxidant vitamin. Neither the '126 patent nor the European patent requires adding antioxidants, amino acids, antimicrobial agents, or nutrient minerals. Therefore, claims 1, 2, 5, and 8-10 in the '624 patent are invalid under § 103(a), because the compositions they describe would have been obvious to a person having ordinary skill in the art at the time the '624 patent was filed. 35 U.S.C. § 103(a).

Both the '126 patent and the European patent disclose the vitamin compositions listed in claims 1, 2, 5, and 8-10 in the '624 patent. Therefore, Defendant's Motion for Summary Judgment is granted and the claims are ruled invalid because they are neither novel nor non-obvious as required by §§ 102 (a)(b)(e)(g) and § 103(a) of the Act.

**D. Plaintiff's Motion to Strike**

Plaintiff requests an order under Rules 16 and 37 of the Federal Rules of Civil Procedure striking Defendant's non-infringement defense and making a determination that Defendant is infringing the '624 patent.

Rule 16(f) allows courts to impose sanctions against parties who disobey scheduling orders or fail to participate in good faith. Fed. R. Civ. P. 16(f). Possible sanctions are listed in Rule 37(b)(2)(B), (C), and (D), and include "striking out pleadings or parts thereof . . . ." Fed. R. Civ. P. 37(b)(2)(C). Generally, Rule 37(b) sanctions striking an affirmative defense are imposed in "strictly limited circumstances," where the sanctioned party has acted in bad faith. Dependahl v. Flastaff Brewing Co., 653 F.2d 1208, 1213 (8th Cir. 1981).

In support of its Motion, Plaintiff alleges that Defendant is violating a Pretrial Scheduling Order dated May 29, 2003 ("Order"), that compelled Defendant to disclose the basis for its non-infringement defense by July 1, 2003. The Order required Defendant to specify any elements missing from its accused product, and to "set forth in detail the basis that the element is absent." Order at 1. Defendant counters that it has "done everything reasonably possible" to comply with the Order, and that Rule 37(b) sanctions are "drastic and unnecessary." Def's Mem. in Opp. at 5-9.

While Rule 37(b)(2)(C) grants the Court authority to strike Defendant's non-infringement defense, Defendant's behavior does not warrant this harsh sanction. Unlike the defendant in Dependahl whose affirmative defenses and counterclaims were stricken, Pan Am has not exhibited a continuous pattern of delay and obstruction. 653 F.2d at 1213 (noting that defendant changed counsel several times in an attempt to slow litigation and avoid discovery). Because

Rule 37(b) sanctions are reserved for extreme infractions, Plaintiff's Motion to Strike is denied.

However, Pan Am's contention that it must await the Court's construction of "antioxidant" before complying with the Order seems disingenuous. This position is inconsistent with Pan Am's arguments in its Motion for Summary Judgment that rely on a common definition of "antioxidant" in discussion of the '624 patent and prior art. Pan Am's statement that the Order does not apply to antioxidants is strained. Pan Am fixates on semantics, but the Order's point is clear. Defendant Pan Am is ordered to comply immediately with the Pretrial Scheduling Order dated May 29, 2003. Additionally, Defendant is ordered to define "antioxidants," and to state whether its accused product Foltx contains "antioxidants."

## IV. CONCLUSION

Based on the foregoing, and all the files, records and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendant's Motion for [Partial] Summary Judgment [Docket No. 73] is **GRANTED**.

2. Count I of Plaintiff's Second Amendment Complaint [Docket No. 128] is **DISMISSED WITH PREJUDICE**.

3. Claims 1, 2, 5, and 8-10 of Plaintiff's '624 patent are ruled invalid under 35 U.S.C. §§ 102(a)(b)(e)(g) and § 103(a).

4. Plaintiff's Motion to Strike [Docket Nos. 87, 108] is **DENIED**.

5. Defendant is **ORDERED** to comply with the Pretrial Scheduling Order dated May 29, 2003 [Docket No. 66] by January 8, 2004, and to specify the elements on Plaintiff's Claim Chart that Defendant admits are present in its accused product, and those elements Defendant contends are absent in its accused product. Defendant must set forth in detail the basis for its contention that an element is absent.

6. Defendant is **ORDERED** to assign a meaning to "antioxidants" and to state whether its accused product contains said "antioxidants." Defendant shall provide Plaintiff with this information by January 8, 2004.

BY THE COURT:

ANN D. MONTGOMERY
UNITED STATES DISTRICT JUDGE

Date: December 19, 2003