**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

Upsher-Smith Laboratories, Inc.,

Plaintiff,

v.

Pan American Laboratories, Inc., Metabolite Laboratories, Inc., Pan American Laboratories, L.L.C., and Pamlab, L.L.C.,

Defendants.

**MEMORANDUM OPINION AND ORDER**
Civil No. 01-352 ADM/AJB

---

Jacob M. Holdreith, Esq., Misti Nelc, Esq., and Annie Huang, Esq., Robins Kaplan Miller & Ciresi, L.L.P., Minneapolis, MN, appeared for and on behalf of Plaintiff.

Glenn K. Beaton, Esq., Gibson Dunn & Crutcher, L.L.P., Denver, CO, and Randy G. Gullickson, Esq., Anthony Ostlund & Baer, P.A., Minneapolis, MN, appeared for and on behalf of Defendants Pan American Laboratories, L.L.C. and Pamlab, L.L.C.

---

## I. INTRODUCTION

Defendants Pan American Laboratories, L.L.C.'s and Pamlab, L.L.C.'s (collectively, "Pamlab") Motion for Summary Judgment on the '646 Patent [Docket Nos. 154, 157] was argued before the undersigned United States District Judge on April 14, 2004. Pamlab asks the Court to invalidate U.S. Patent No. 6,605,646 ("'646 Patent") as anticipated and obvious based on prior art. Pamlab also moves for an award of attorney fees under 35 U.S.C. § 285 [Docket No. 171]. For the reasons explained below, Pamlab's Motion on the '646 Patent is granted, and its Motion for attorney fees is denied.

## II. BACKGROUND[1]

Plaintiff Upsher-Smith Laboratories, Inc. ("Upsher-Smith") claims that Pamlab's Foltx product infringes its patents, U.S. Patent No. 5,932,624 ("'624 Patent") and the '646 Patent. Both patents concern a vitamin supplement formula containing folic acid and vitamin $B_{12}$, a combination that potentially lowers homocysteine levels in blood. The patents specify that this combination be "essentially free of antioxidants," since antioxidants diminish the formulation's efficacy. See '624 Patent,'646 Patent (Gullickson Aff. of 01/29/04 Exs. G, H). While the folic acid/$B_{12}$ combination was known when Dr. Victor Herbert applied for the '624 Patent in October 1995,[2] the Patent and Trademark Office ("PTO") issued Patent '624 because it expressly excludes antioxidants. See '624 Patent col. 1, ll. 54-55; see also Letter from PTO to Olnstein of 01/22/99 at 2 (Gullickson Aff. of 06/13/03 Ex. B).

The '646 Patent, a continuation-in-part of the '624 Patent, was issued on August 12, 2003, after Pamlab had moved for summary judgment to invalidate the '624 Patent. It also contains the "essentially free of antioxidants" limitation, but differs slightly from the '624 Patent in adding claims for a particular range of vitamin $B_{12}$ and specifying that the formulation decreases homocysteine levels. See '646 Patent col. 7, ll. 8-12 and col. 8, ll. 5-10. Upsher-Smith amended its Complaint on October 20, 2003, to include claims that Pamlab was infringing the '646 Patent. See Second Am. Compl. [Docket

---

[1] Because much of the procedural and factual background in this case is already explained in this Court's Order of December 19, 2003, the present Order will add pertinent new background information only. See Memorandum Opinion and Order of 12/19/03 [Docket No. 146].

[2] Upsher-Smith is the assignee of both the '624 and '646 Patents. See '624 Patent and '646 Patent.

No. 128].

This Court's Order dated December 19, 2003 ("December Order") invalidated the '624 Patent under § 102 and § 103 of the Patent Act and held that the '624 Patent was anticipated and obvious based on prior art. See Order of 12/19/03 at 13 [Docket No. 146]. Specifically, the December Order held that U.S. Patent No. 5,563,126 ("'126 Patent") and a European patent application ("European Patent") disclosed a folic acid/$B_{12}$ vitamin supplement formula which did not require adding antioxidants. Id. at 9, 11, 13. The '126 Patent, one in a series of patents issued to two University of Colorado professors ("Professors' Patents"), describes a vitamin formulation comprised of folic acid and $B_{12}$. See '126 Patent; see also U.S. Patents Nos. 5,795,873; 6,207,651; 6,297,224 and 6,528,496 (Gullickson Aff. of 06/13/03 Ex. C). The December Order concluded that the disclosures in the '126 Patent and European Patent anticipated and rendered obvious the claims in the '624 patent. See Order of 12/19/03 at 9, 11, 13.

## III. DISCUSSION

Pamlab now moves to invalidate the '646 Patent and additionally seeks attorney fees under 35 U.S.C. § 285.

### A. Pamlab's Summary Judgment Motion on the '646 Patent

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall issue "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252

(1986); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). On a motion for summary judgment, the court views the evidence in the light most favorable to the nonmoving party. Ludwig v. Anderson, 54 F.3d 465, 470 (8th Cir. 1995). The nonmoving party may not "rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial." Krenik v. County of Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995).

Pamlab argues that like the '624 Patent, Upsher-Smith's '646 Patent is invalid under § 102 and § 103 because the Professors' Patents and the European Patent disclose all of its claimed limitations. While patents are presumed valid, this presumption can be overcome by clear and convincing evidence of invalidity. See 35 U.S.C. § 282; Nat'l Presto Indus., Inc. v. Bend Co., 76 F.3d 1185, 1189 (Fed. Cir. 1996). Valid patent claims must be both novel and non-obvious as required by § 102 and § 103 of the Patent Act ("Act"). See 35 U.S.C. §§ 102-03. A patent fails § 102's novelty requirement and is anticipated if all of its claimed limitations are disclosed by a single prior art reference. See id. § 102; Schering Corp. v. Geneva Pharm., Inc., 339 F.3d 1373, 1377 (Fed. Cir. 2003). To establish invalidity under § 103 on obviousness grounds, the moving party must show that all of the claim limitations are present in a combination of prior art references. See McGinley v. Franklin Sports, Inc., 262 F.3d 1339, 1351 (Fed. Cir. 2001). The party must also prove that motivation to combine these references existed at the time when the disputed invention was created. See Gambro Lundia AB v. Baxter Healthcare Corp., 110 F.3d 1573, 1578-9 (Fed. Cir. 1997).

Like the '624 Patent, the '646 is invalid under § 102 and § 103 because the Professors' Patents and the European Patent disclose a folic acid/$B_{12}$ combination that is essentially free of antioxidants. The Professors' Patents and the European Patent, which constitute prior art to the '646

Patent, outline various combinations of folic acid and $B_{12}$ and sometimes include $B_6$, a non-antioxidant vitamin.[3] See '126 Patent col. 26, ll. 46-63; Patent No. 5,795,873 col. 28, ll. 49-54, col. 29, ll. 16-21, 33-38; Patent No. 6,297,224 col. 26, ll. 32-36, 44-48; Patent No. 6,528,496 col. 26, ll. 36-37, 43-44, 56-58; see also European Patent at 4, ll. 24-33, 37-44; 7, ll. 1-3; 9, ll. 9-50; 18, ll. 50-55. The Professors' Patents do not require inclusion of antioxidants, and in fact say nothing about antioxidants in their claims. See '126 Patent; see also Patent Nos. 5,795,873; 6,297,224; 6,528,496. The European Patent specifically notes that adding antioxidants is "optional." See European Patent at 21, ll. 6-8. Consequently, the Professors' Patents and the European Patent anticipate claim 1 of the '646 Patent which outlines a supplement consisting of folic acid, 25 to 1000 micrograms of $B_{12}$ and $B_{6,}$ and excludes antioxidants. See '646 Patent col. 7, ll. 8-12. The Professors' Patents and the European Patent also anticipate claims 2-7, which depend on claim 1. Id. col 7, ll. 13-16 and col. 8, ll. 1-12. Additionally, the '646 Patent's claims are obvious under § 103 given the folic acid/$B_{12}$ compositions disclosed in the Professors' Patents and the European Patent. Thus, Pamlab's Motion for Summary Judgment on the '646 Patent is granted because Pamlab has provided clear and convincing evidence

[3] The '646 Patent is a continuation-in-part of the '624 Patent, which Dr. Herbert applied for on October 17, 1995. See '624 Patent and '646 Patent. Several of the Professors' Patents pre-date the '624 Patent and '646 Patent. These include the '126 Patent, filed on December 29, 1992, U.S. Patents Nos. 6,297,224 and 6,528,496, which are continuations of the '126 Patent, and U.S. Patent No. 5,795,873, a division of the '126 Patent. See Gullickson Aff. of 06/13/03 Ex. C. The more recent patents date back to the '126 Patent's application date of December 29, 1992. See 35 U.S.C. § 120. The '126 Patent, filed before both the '624 and '646 Patents, constitutes prior art under § 102(e). See 35 U.S.C. § 102(e). The Professors' Patents generally are evidence of what was "known or used by others in this country" before the '624 Patent, parent of the '646 Patent, was filed, and illustrate an invention "made in this country by another" that predates the '624 and '646 Patents. See 35 U.S.C. § 102 (a)(g). The European Patent application, published on May 4, 1994, constitutes prior art under § 102(b). See id. § 102(b); see also Gullickson Aff. of 08/11/03 Ex. A.

illustrating its invalidity.

**B. Pamlab's Motion for Attorney Fees under 35 U.S.C. § 285**

Pamlab also moves for fees under § 285 of the Patent Act, which authorizes an award of reasonable attorney fees to the prevailing party in exceptional cases. See 35 U.S.C. § 285. As a threshold matter, the Court must decide whether the Motion is premature. Upsher-Smith argues that the Court should defer consideration of the Motion pending entry of judgment on all claims. Upsher-Smith correctly notes that prior to the present Order, judgment had not been entered on the '646 Patent infringement claim. Because § 285 does not define the timing for an attorney fees motion by a prevailing party, Upsher-Smith bases its argument on local court rules. Specifically, Rule 54.3(b) requires that "within 30 days of entry of judgment in the case," a party seeking a fees award shall file "an itemized motion for the award of attorney fees" or "within 15 days of the entry of judgment in the case" serve a "Notice of Intent to Claim an Award of Attorney's Fees." D. Minn. LR 54.3(b).

The Court will reach the merits of Pamlab's Fees Motion although the motion may be earlier than the suggested deadlines established in Rule 54.3(b).[4] First, interests of judicial economy and efficiency favor addressing Pamlab's fees Motion now. Adjudicating the Motion in this Order does not prejudice either party because both fully briefed the Motion and presented arguments at the April 14th hearing. Further, given the basis of Pamlab's request, the parties' arguments would not change if the Motion were heard at a later date. Requiring Pamlab to re-file the Motion and re-argue its merits

---

[4] The comments to Rule 54.3(b) note that "some circumstances . . . may call for a different schedule for the submission of fee motions." The comments also emphasize fairness and efficiency concerns in structuring a fee motion schedule. See Cmts. to D. Minn. LR 54.3(b).

would needlessly waste the Court's and the parties' time and resources. Second, the basic intent of Rule 54.3(b) is to encourage prompt submission of fee motions so that courts can review such requests shortly after a case has been decided. See Cmts. to D. Minn. LR 54.3(b). Given this Court's full hearing schedule in the next few months, it is best to address the issue now with the underlying facts and circumstances of this litigation freshly in mind, rather than deferring consideration for several weeks or months. Accordingly, addressing the Motion now complies with Rule 54.3(b)'s policy goals.

Awarding attorney fees under § 285 is a two-step process. First, the court must determine whether the prevailing party has proved by clear and convincing evidence that the case is exceptional. See Forest Labs., Inc. v. Abbot Labs., 339 F.3d 1324, 1327-28 (Fed. Cir. 2000). Second, if the court concludes that a case is exceptional, it must then decide whether an award of attorney fees is appropriate. Id. at 1328. Courts award attorney fees to prevailing accused infringers only when necessary to prevent "'a gross injustice' to the accused infringer." Id. at 1329 (citations omitted).

In order to recover fees and prove that the case is exceptional, a prevailing party accused of patent infringement must show that the patentee litigated in bad faith. Id.; see also Imagineering, Inc. v. Van Klassens, Inc., 53 F.3d 1260, 1267 (Fed. Cir. 1995). Bad faith may be proved through direct evidence of wrongful intent or with evidence of gross negligence that reveals willful, wanton, or reckless misconduct. See Mach. Corp. of Am. v. Gullfiber AB, 774 F.2d 467, 473 (Fed. Cir. 1985). Pursuing vexatious, unjustified, or frivolous litigation illustrates bad faith and supports a fee award. See Forest Labs., 339 F.3d at 1329-30. A frivolous patent infringement suit "is one which the patentee knew or, on reasonable investigation, should have known, was baseless." Haynes Int'l, Inc. v. Jessup Steel Co., 8 F.3d 1573, 1579 (Fed. Cir. 1993) (citation omitted). Additionally, litigation misconduct and

unprofessional behavior "are relevant to the award of attorney fees and may suffice to make a case exceptional under § 285." Sensonics v. Aerosonic Corp., 81 F.3d 1566, 1574 (Fed. Cir. 1996). However, a patentee's reasoned, good faith judgment concerning infringement can overcome a "determination of exceptionality." Brasseler v. Stryker Sales Corp., 267 F.3d 1370, 1381-82 (Fed. Cir. 2001).

The Court declines to award attorney fees because Pamlab has not proved, by clear and convincing evidence, that Upsher-Smith pursued this litigation in bad faith. In support of its § 285 Motion, Pamlab first argues that Upsher-Smith exhibited bad faith by initiating frivolous claims. Pamlab alleges that Upsher-Smith filed a baseless suit to gain leverage during negotiations concerning possible licensing of the Professors' Patents. Pamlab emphasizes that when Upsher-Smith initially filed suit, it did not own the '624 or '646 Patents, but sought a declaratory judgment that the Professors' Patents were invalid. See Compl. ¶¶ 15-27 [Docket No. 1]. The declaratory judgment claim was dismissed,[5] but Upsher-Smith had by then acquired the '624 Patent and amended its Complaint to include an infringement claim. See Order of 09/04/02 at 10 [Docket No. 55]; First Am. Compl. ¶¶ 17-19 [Docket No. 3]. Pamlab asserts that Upsher-Smith's infringement claims concerning both the '624 Patent and the '646 Patent were meritless as well, because the '646 Patent "should be treated consistently with the '624 Patent," which was found invalid under § 102 and § 103 in the December Order. Def. Pamlab's Reply Mem. in Supp. of Attorney Fees at 6.

---

[5] Upsher-Smith initially filed a declaratory judgment claim against both Pamlab and Metabolite Industries, Inc., the company that owns the Professors' Patents. The declaratory judgment claim against Pamlab became moot after claims against Metabolite Industries, Inc. were dismissed for lack of personal jurisdiction. See Order of 09/04/02 at 10-11.

The record does not support by clear and convincing evidence that Upsher-Smith pursued frivolous litigation. The Court never reached the merits of Upsher-Smith's declaratory judgment claims, and despite this Court's judgment to the contrary, Upsher-Smith could have reasonably believed that the '624 and '646 Patents were valid given the requisite presumption of validity. See 35 U.S.C. § 282; Nat'l Presto Indus., Inc. 76 F.3d at 1189.

Pamlab argues additionally that Upsher-Smith's vexatious litigation tactics warrant an attorney fees award under § 285. Pamlab cites numerous examples of supposedly unprofessional behavior by Upsher-Smith, including allegations that Upsher-Smith made unfounded claims of privilege, improperly signaled to a witness during a deposition, concealed the existence of the European Patent, lied to the Court about the European Patent, refused to produce a Rule 30(b)(6) witness, and failed to appear at its own subpoenaed deposition. Upsher-Smith disputes these allegations, contending that its attorneys did not abuse the discovery process or answer the Court's questions about the European Patent untruthfully. Upsher-Smith avers that it did not immediately produce the European Patent and related materials because it contested the scope of Pamlab's request for documents, and was attempting to resolve this conflict. Concerning the Rule 30(b)(6) witness and the missed deposition, Upsher-Smith argues that it believed discovery was stayed during this period. Additionally, Upsher-Smith reimbursed Pamlab for costs incurred from the missed deposition. See Order of 02/13/04 [Docket No. 163].

These allegations do not support an attorney fees award. Missing depositions and employing a highly confrontational discovery strategy are in no way condoned. This case represents an example of aggressive contentiousness where neither party is immune from criticism. Pamlab, for instance, did not specify whether its Foltx product contained antioxidants until ordered to do so, despite discovery

requests from Upsher-Smith. See Order of 12/13/03 at 16. This litigation has fallen short of the level of professionalism this Court expects from attorneys, but Upsher-Smith's actions are not sufficiently egregious to warrant requiring it to pay Pamlab's attorney fees. Therefore, Pamlab's Motion for Attorney Fees under § 285 is denied.

## IV. CONCLUSION

Based on the foregoing, and all the files, records and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Pamlab's Motion for Summary Judgment on the '646 Patent [Docket Nos. 154, 157] is **GRANTED**,

2. Pamlab's Motion for Summary Judgment for Attorney's Fees Pursuant to 35 U.S.C. § 285 [Docket No. 171] is **DENIED**,

3. Count II of Upsher-Smith's Second Amended Complaint [Docket No. 128] is **DISMISSED WITH PREJUDICE**. As Count I of the Second Amended Complaint was dismissed in the December Order, the entire Complaint is thus **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

BY THE COURT:

s/Ann D. Montgomery
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated: April 26, 2004.