**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

UPSHER-SMITH LABORATORIES, INC.

Plaintiff, Case No. 01-352 ADM/AJB

v.

AMERICAN LABORATORIES, INC.,
METABOLITE LABORATORIES, INC.,
PAN AMERICAN LABORATORIES, L.L.C.,
and PAMLAB, L.L.C.,

Defendants.

---

# PLAINTIFF UPSHER-SMITH LABORATORIES, INC.'S POWERPOINT PRESENTATION USED AT THE DEFENDANT PAN AMERICAN'S MOTION FOR SUMMARY JUDGMENT OF INVALIDITY AND PLAINTIFF UPSHER-SMITH'S MOTION TO STRIKE HEARING HELD ON OCTOBER 9, 2003

*Upsher-Smith Laboratories v. Pan American Laboratories* Civ. No. 01-352 ADM/AJB

# Argument of Plaintiff, Upsher-Smith Laboratories, in Opposition to Pan American's Motion for Summary Judgment of Invalidity

Hearing of October 9, 2003

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.



© 2003 Robins, Kaplan, Miller & Ciresi L.L.P.

# Summary

- PamLab has not met its burden to show by clear and convincing evidence a prior description of a folic acid and B12 combination that necessarily omitted anti-oxidants, amino acid supplements, nutrient minerals, and antimicrobial agents.

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.



© 2003 Robins, Kaplan, Miller & Ciresi L.L.P.

# PamLab's Burden To Show Invalidity is High

- Anticipation and Obviousness Are Fact Issues
- Patent Claims Are Presumed Valid
- Evidentiary Burden Is "Clear and Convincing" Proof
- Burden Always Remains On PamLab

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.


© 2003 Robins, Kaplan, Miller & Ciresi L.L.P.

# It is PamLab's burden to show that a prior reference necessarily excluded antioxidants and other substances.

## It is not Upsher-Smith's burden to show the prior references included antioxidants.

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.



© 2003 Robins, Kaplan, Miller & Ciresi L.L.P.

# Inherent Features Must Be "Necessarily Present"

- Inherent anticipation requires that the missing descriptive material is "necessarily present," not merely probably or possibly present, in the prior art. In re Robertson, 169 F.3d 743, 745, 49 USPQ2d 1949, 1950-51 (Fed. Cir. 1999) (citing Continental Can Co. USA, Inc. v. Monsanto Co., 948 F.2d 1264, 1268, 20 USPQ2d 1746, 1749 (Fed. Cir. 1991)).

Trintec Indus., 295 F.3d at 1295 (Fed. Cir. 2002) (emphasis added).

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.



© 2003 Robins, Kaplan, Miller & Ciresi L.L.P.

# The Limitations At Issue:

US005932624A

**United States Patent** [19]
**Herbert**

[11] **Patent Number:** **5,932,624**
[45] **Date of Patent:** ***Aug. 3, 1999**

[54] **VITAMIN SUPPLEMENT COMPOSITION**

[76] Inventor: **Victor D. Herbert**, 440 E. 62nd St., Apt. 18D, NY, N.Y. 10021

[ * ] Notice: This patent issued on a continued prosecution application filed under 37 CFR 1.53(d), and is subject to the twenty year patent term provisions of 35 U.S.C. 154(a)(2).

[21] Appl. No.: **08/544,330**

[22] Filed: **Oct. 17, 1995**

[51] **Int. Cl.**[6] ........ **A61K 31/00**
[52] **U.S. Cl.** ........ **514/904**; 536/26.4; 544/250; 546/301
[58] **Field of Search** ........ 514/904; 536/26.4; 544/250; 546/301

[56] **References Cited**

U.S. PATENT DOCUMENTS

2,748,054 5/1956 Jurist ........ 514/52
4,053,593 10/1977 Frumoff ........ 514/25
5,039,668 8/1991 Colina ........ 514/52
5,135,851 8/1992 Kajander ........ 435/34

OTHER PUBLICATIONS

Refsum, H. et al, Cancer Research, vol. 46(10), pp. 5385–5391, abstract only, Oct. 1986.
Drug Facts and Comparisons, edited by B.R. Olin et al, Wolters Kluwer Co. pp. 60–63, Feb. 1995.

*Primary Examiner*—Zinna Northington Davis
*Attorney, Agent, or Firm*—Elliot M. Olstein; Alan J. Grant

[57] **ABSTRACT**

A multiple vitamin supplement composition comprising folic acid and vitamin $B_{12}$ disclosed that is essentially free of antioxidants is disclosed. The multiple vitamin supplement composition may contain vitamin $B_6$. The multiple vitamin supplement composition is useful for lowering serum homocysteine levels to protect against related blood vessel disorders. Further disclosed is a method of preparing such a multiple vitamin supplement and a method of administration.

**15 Claims, No Drawings**

What is claimed:

**1.** A vitamin or supplement composition adapted for administration to a human, the active components thereof consisting essentially of a member selected from the group consisting of:

(a) folic acid, and vitamin $B_{12}$;

(b) folic acid, vitamin $B_{12}$, and vitamin $B_6$;

(c) folic acid, vitamin $B_{12}$, and a non-antioxidant vitamin; and

(d) folic acid, vitamin $B_{12}$, and non-antioxidant vitamins,

said composition being essentially free of anti-oxidants.

"said composition being essentially free of antioxidants" *(all asserted claims)*

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.



© 2003 Robins, Kaplan, Miller & Ciresi L.L.P.

# The Limitations At Issue:

US005932624A

**United States Patent** [19] **Herbert**

[11] **Patent Number: 5,932,624**
[45] **Date of Patent: *Aug. 3, 1999**

[54] **VITAMIN SUPPLEMENT COMPOSITION**

[76] Inventor: **Victor D. Herbert**, 440 E. 62nd St., Apt. 18D, NY, N.Y. 10021

[ * ] Notice: This patent issued on a continued prosecution application filed under 37 CFR 1.53(d), and is subject to the twenty year patent term provisions of 35 U.S.C. 154(a)(2).

| | | | |
|---|---|---|---|
| 4,053,593 | 10/1977 | Frumoff | 514/25 |
| 5,039,668 | 8/1991 | Colina | 514/52 |
| 5,135,851 | 8/1992 | Kajander | 435/34 |

OTHER PUBLICATIONS

Refsum, H. et al, Cancer Research, vol. 46(10), pp. 5385–5391, abstract only, Oct. 1986.
Drug Facts and Comparisons, edited by B.R. Olin et al, Wolters Kluwer Co. pp. 60–63, Feb. 1995.

*Primary Examiner*—Zinna Northington Davis
*Attorney, Agent, or Firm*—Elliot M. Olstein; Alan J. Grant

5. A vitamin composition adapted for administration to a mammal comprising:

folic acid, said composition being essentially free of additional vitamins other than a B vitamin or B vitamins and essentially free of antioxidants,

wherein said composition does not include amino acid supplements or an antimicrobial agent.

6. The composition of claim 1 in a unit dose form, said

8. A vitamin composition according to claim 1, wherein said composition is also free of any nutrient minerals.

wherein said composition:

"does not include amino acid supplements or an antimicrobial agent" *(claims 5, 10)*

"is also free of nutrient minerals" *(claim 8)*

...LLER & CIRESI L.L.P.

rkmc.com

© 2003 Robins, Kaplan, Miller & Ciresi L.L.P.

# The Reference Must Describe Clearly and in Detail

- Anticipation is a question of fact, as is the question of inherency. . . . The single reference must describe and enable the claimed invention, including all claim limitations, with sufficient clarity and detail to establish that the subject matter already existed in the prior art and that its existence was recognized by persons of ordinary skill in the field of the invention.

Elan Pharms., 304 F.3d at 1227-28 (Fed. Cir. 2002) (emphasis added and citations omitted)

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.



© 2003 Robins, Kaplan, Miller & Ciresi L.L.P.

# The state of the art was to do everything possible to include antioxidants in combination vitamins.

The following additional remarks are to clarify the previously provided remarks and to advance the prosecution by narrowing the issues.

As indicated in the prior response the claimed compositions are useful for
of heart disease, which treatment may be defined as the prevention of heart
slowing of the progression of heart disease. In such regard, the treatment's ben
from the claimed compositions can be significantly diminished by the inclusion
vitamins or minerals in the compositions. In fact, the components of the comp
for such treatment effects can be significantly damaged by the presence of additi
or minerals in the compositions. Thus, eliminating other multivitamin ingredients
minerals as excluded by the claims), antioxidants, biological supplements such as
acids would not have been suggested to one of ordinary skill in the art prior
invention.

While the Office Action has taken a position that perhaps it would be simpl
such other vitamins and minerals from vitamin compositions to result in
compositions. However, there is no motivation in the art to make such elimin
provide the present useful compositions. In fact, the clear commercial motivatio
art would be to produce as close to a single-dose multivitamin and mineral s
possible. Such is readily apparent in that patients who take multivitamins clearly
a one dose vitamin supplement and be done with it. However, such additional s
inactivate the present compositions or counter-act their effects.

Prior to the present invention, there was no motivation for providing the presently claimed compositions. Further, the beneficial effects of such an elimination were not know in the prior art cited by the Examiner.

While the Office Action has taken a position that perhaps it would be simple to eliminate such other vitamins and minerals from vitamin compositions to result in the present compositions. However, there is no motivation in the art to make such eliminations and to provide the present useful compositions. In fact, the clear commercial motivation in the prior art would be to produce as close to a single-dose multivitamin and mineral supplement as possible. Such is readily apparent in that patients who take multivitamins clearly prefer to take a one dose vitamin supplement and be done with it. However, such additional substances can inactivate the present compositions or counter-act their effects.

'624 FH Paper No. 4, Holdreith Aff. Exh. 4 at p. 3.

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.



© 2003 Robins, Kaplan, Miller & Ciresi L.L.P.

# The B12 Art was a crowded art by 1995.

Increments in knowledge are very specific.

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.



© 2003 Robins, Kaplan, Miller & Ciresi L.L.P.

# Practitioners did not appreciate the need to avoid antioxidants.

- PamLab has been unable to show the Court any actual commercial product or practice prior to Herbert that is a B12 and folic acid vitamin combination free of antioxidants.

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.



© 2003 Robins, Kaplan, Miller & Ciresi L.L.P.

# The "Professors" did not appreciate the need to avoid antioxidants.

- They don't so much as mention antioxidants in their patents.
- "comprising" specifically allows antioxidants.

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.



© 2003 Robins, Kaplan, Miller & Ciresi L.L.P.

# The Art Taught Away:

- Herbert 1976 letter: Iron, Copper and other substances may protect B12 against destruction by C.
- Herbert 1982 letter: OMIT B12 from multivitamins to prevent analogues.
- Herbert Book Chapter: monitor serum B12 when taking mega doses of C.
- 1994 European Patent Application: preferable to include antioxidants, nutrient minerals.


© 2003 Robins, Kaplan, Miller & Ciresi L.L.P.

# Even Dr. Herbert Suggested Omitting B12 and Keeping C Prior To His Invention:

- "[W]e recommend that manufacturers either voluntarily omit vitamin B12 from their vitamin/mineral preparations or indicate on their labeling the presence of vitamin B12 analogues."

Herbert et al., Multivitamin/Mineral Food Supplements . . ., Letter to the Ed. N. Eng. J. Med. v. 307 No. 4 (1982), part of PamLab's Exh. E.

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.



© 2003 Robins, Kaplan, Miller & Ciresi L.L.P.

# Why? . . .

- Because no-one working in the art understood prior to Dr. Herbert's patent that a folic acid and B12 combination vitamin should omit antioxidants!
- [And that they should omit nutrient minerals, amino acid supplements, and antimicrobial agents.]

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.



© 2003 Robins, Kaplan, Miller & Ciresi L.L.P.

**VICTOR HERBERT, M.D., J.D., M.A.C.P., F.R.S.M. (London)**



Professor of Medicine and Chair, Committee to Strengthen Nutrition, Mount Sinai-New York University Health System, NYC; Chief, Mount Sinai Nutrition Center and Hematology and Nutrition Research Laboratory at the Department of Veterans' Affairs Medical Center, Bronx, NY.

A native of New York, Dr. Herbert received his B.S. in chemistry (1948), M.D.(1952) and J.D.(1974) all at Columbia Univ. After internship at Walter Reed Army Medical Center, he undertook his teaching, research, and patient care career in hematology/oncology, nutrition and internal medicine, with strong emphasis on biochemistry, physiology, and clinical pathology, with voluntary Army service in four wars (WW II, Korea, Vietnam, Persian Gulf)(re-retiring as a Green Beret Lt. Col. after the Gulf War). On the full-time medical school faculties of Einstein, Mount Sinai, Harvard, Columbia, SUNY-Brooklyn (formerly SUNY-Downstate), and Hahnemann, before returning in 1985 to Mount Sinai.

A member of numerous scientific societies, he has published over 850 scientific papers, sits on the editorial boards of 6 scientific journals, sits on the WHO-FAO Committees on Nutritional Anemias and on Dietary Requirements, lectures at medical institutions across the U.S. and around the world, is a frequent guest on many national television shows. His many awards for nutrition research include the 1972 McCollum Award and the 1986 Robert H. Herman Award (both from the American Society for Clinical Nutrition), the 1978 Middleton Award (highest award for medical research given by the US Veterans' Administration), the FDA Commissioner's Special Citation in 1984 for "outstanding and consistent contributions against the proliferation of nutrition quackery to the American consumer," the 1988 Honorary Membership Award and Plaque from the American Dietetic Association, and the 1993 American Institute of Nutrition's Lifetime Fellow Award for his "nutrition research, teaching and unique contribution to the

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.



© 2003 Robins, Kaplan, Miller & Ciresi L.L.P.

Dr. Herbert added to medical knowledge by teaching, contrary to existing thinking, that damaging antioxidants must be omitted when administering a combination vitamin including folic acid and B12.

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.



© 2003 Robins, Kaplan, Miller & Ciresi L.L.P.

# "Essential Freedom from Antioxidants" is Not Shown In PamLab's Publications By Clear and Convincing Evidence

Neither is freedom from antimicrobial agents, amino acid supplements, and nutrient minerals.

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.



© 2003 Robins, Kaplan, Miller & Ciresi L.L.P.

# PanLab's Publications Do Not Describe The Problem

- The Allen "Professors'" Patents make NO MENTION of antioxidants at all!
- Other references do not identify the need to administer folic acid and B12 in the absence of antioxidants.


© 2003 Robins, Kaplan, Miller & Ciresi L.L.P.

# PanLab's Publications Did Not Describe The Solution

- Most of the references do not deal with a folic acid and Vitamin B12 combination at all.

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.



© 2003 Robins, Kaplan, Miller & Ciresi L.L.P.

# PanLab's Publications Did Not Describe The Solution

- Many of the publications teach away by suggesting:
  - Balancing vitamin therapy – moderate doses of C.
  - Omitting B12 from multiple vitamins.
  - Monitoring for B deficiency.
  - Adding protective mechanisms to protect the B.

See In re Gurley, 27 F.3d 551 (Fed. Cir. 1994).

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.



© 2003 Robins, Kaplan, Miller & Ciresi L.L.P.

# The "Professors' Patents"

- Do not so much as mention antioxidants.
- The Professors do not describe any experiment in which they actually administered vitamins of any kind in any combination to anyone.
- "Comprising" permits antioxidants, nutrient minerals, antimicrobial agents, amino acid supplements.

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.



© 2003 Robins, Kaplan, Miller & Ciresi L.L.P.

# European Patent Application

- The European Patent Application teaches away by specifically recommending the use of antioxidants with B12 and folic acid: e.g., "one or more of the anti-oxidants are preferably included" p. 9 lines 44-45 and passim
- The "comprising/containing" language permits antioxidants – rather than necessarily excluding them.

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.



© 2003 Robins, Kaplan, Miller & Ciresi L.L.P.

claim limitation"); *Kropa v. Robie*, 187 F.2d at 152, 88 USPQ2d at 480-81 (preamble is not a limitation where claim is directed to a product and the preamble merely recites a property inherent in an old product defined by the remainder of the claim); *STX LLC. v. Brine*, 211 F.3d 588, 591, 54 USPQ2d 1347, 1350 (Fed. Cir. 2000) (holding that the preamble phrase "which provides improved playing and handling characteristics" in a claim drawn to a head for a lacrosse stick was not a claim limitation). >Compare *In re Cruciferous Sprout Litig.*, 301 F.3d 1343, 1346-48, 64 USPQ2d 1202, 1204-05 (Fed. Cir. 2002) (A claim at issue was directed to a method of preparing a food rich in glucosinolates wherein cruciferous sprouts are harvested prior to the 2-leaf stage. The court held that the preamble phrase "rich in glucosinolates" helps define the claimed invention, as evidenced by the specification and prosecution history, and thus is a limitation of the claim (although the claim was anticipated by prior art that produced sprouts inherently "rich in glucosinolates").<

During examination, statements in the preamble reciting the purpose or intended use of the claimed invention must be evaluated to determine whether the recited purpose or intended use results in a structural difference (or, in the case of process claims, manipulative difference) between the claimed invention and the prior art. If so, the recitation serves to limit the claim. See, e.g., *In re Otto*, 312 F.2d 937, 938, 136 USPQ 458, 459 (CCPA 1963) (The claims were directed to a core member for hair curlers and a process of making a core member for hair curlers. Court held that the intended use of hair curling was of no significance to the structure and process of making.); *In re Sinex*, 309 F.2d 488, 492, 135 USPQ 302, 305 (CCPA 1962) (statement of intended use in an apparatus claim did not distinguish over the prior art apparatus). If a prior art structure is capable of performing the intended use as recited in the preamble, then it meets the claim. See, e.g., *In re Schreiber*, 128 F.3d 1473, 1477, 44 USPQ2d 1429, 1431 (Fed. Cir. 1997) (anticipation rejection affirmed based on Board's factual finding that the reference dispenser (a spout disclosed as useful for purposes such as dispensing oil from an oil can) would be capable of dispensing popcorn in the manner set forth in appellant's claim 1 (a dispensing top for dispensing popcorn in a specified

manner)) and cases cited therein. See also MPEP § 2112 - § 2112.02.

2111.03 Transitional Phrase

basic and novel characteristic(s)" of the claimed invention. *In re Herz*, 537 F.2d 549, 551-52, 190 USPQ 461, 463 (CCPA 1976) (emphasis in origi-



The transitional term "comprising", which is synonymous with "including," "containing," or "characterized by," is inclusive or open-ended and does not exclude additional, unrecited elements or method steps. See, e.g., *Genentech, Inc. v. Chiron Corp.*, 112 F.3d 495, 501, 42 USPQ2d 1608, 1613 (Fed. Cir. 1997) ("Comprising" is a term of art used in claim language which means that the named elements are essential, but other elements may be added and still form a construct within the scope of the claim.); *Moleculon Research Corp. v. CBS, Inc.*, 793 F.2d 1261, 229 USPQ 805 (Fed. Cir. 1986); *In re Baxter*, 656 F.2d 679, 686, 210 USPQ 795, 803 (CCPA 1981); *Ex parte Davis*, 80 USPQ 448, 450 (Bd. App. 1948) ("comprising" leaves "the claim open for the inclusion of unspecified ingredients even in major amounts").

MPEP 2111.03

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.

rkmc.com

© 2003 Robins, Kaplan, Miller & Ciresi L.L.P.

Europäisches Patentamt
European Patent Office
Office européen des brevets

Publication number: **0 595 005 A1**

**EUROPEAN PATENT APPLICATION**

Application number: 93114762.3

Date of filing: 14.09.93

Int. Cl.[5] A61K 31/68, //(A61K31/68, 31:505,31:44)

EP 0 595 005 A1

cysteine levels (perhaps due to genetic abnormalities, or for other reasons) in whom, during treatment, homocysteine levels decline slowly to normality over a long period (e.g. weeks). Homocysteine-induced oxidation of cholesterol can be suppressed by means of antioxidants (e.g. β-carotene, vitamin E, vitamin C,coenzyme Q, etc.). In this respect, it has surprisingly been found that pyridoxal (PL) itself has anti-oxidant (anti-free radical) activity. Thus when used as provided for in the invention, PL serves a variety of purposes as outlined above, including that of an anti-oxidant.

However, particularly in severe cases of homocysteinuria (e.g. due to genetic disorder) it is advantageous to include one or more powerful anti-oxidants drawn from the list of compounds mentioned above.

In such cases it may also be necessary to administer choline or betaine as herein provided for. Thus, according to yet another aspect of the invention, a pharmaceutical formulation comprising vitamin B6 (preferably at least in part in the form of pyridoxal) folic acid and vitamin B12 in combination with one or

| | | | |
|---|---|---|---|
| Coenzyme Q10 | 10-100 | 15-50 | 20 |

**In different formulations, one or more of the anti-oxidants are preferably included with the first three compounds.**

All such formulations are preferably formulated in such a manner that both a rapid release phase and a retarded release phase is present as previously outlined. The anti-oxidant component(s) may be present in either phase.


| | | | |
|---|---|---|---|
| Ascorbic acid | 30-1000 | 100-700 | 500 |
| Coenzyme Q10 | 10-100 | 15-50 | 20 |

In different formulations, one or more of the anti-oxidants are preferably included with the first three compounds.

All such formulations are preferably formulated in such a manner that both a rapid release phase and a retarded release phase is present as previously outlined. The anti-oxidant component(s) may be present in either phase.


The pharmaceutical compositions are not only to be used in the treatment of raised homocysteine levels induced nutritionally, genetically or as a result of a variety of diseases, but also in those cases where the elevated homocysteine levels are drug induced or in combination with a B6 or folate antagonistic drug, which has a tendency to raise homocysteine levels. Examples of other situations in which blood homocysteine levels may be elevated are the following: post-menopausal women, liver failure, leukemia, other cancers, chronic renal failure. Slow-release formulation of PL prevents excessive liver oxidation to the biologically inactive pyridoxic acid.

9

EP 0 595 005

Rank Xerox (UK) Business Services

ROBINS, KAPLA



© 2003 Robins, Kaplan, Miller & Ciresi L.L.P.

# Macek

- Crystalline Vitamin B12 “incompatible” with Vitamin C after heating.
- No suggestion to administer B12 and folic acid without antioxidants.
- Mechanism not identified – no suggestion it is an antioxidant reaction.
- No mention of folic acid.
- B12 stable in a pH adjusted solution – suggests acidity of Vitamin C may cause reaction.

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.


© 2003 Robins, Kaplan, Miller & Ciresi L.L.P.

# Herbert 1974 Letter

- Large doses of vitamin C destroy B12 from food, which is less stable than crystalline B.
- No mention of folic acid.
- No suggestion to administer B12 and folic acid without antioxidants.
- States Iron may protect B12 from C.
- States there is no destruction of B12 in food by RDA of C

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.



© 2003 Robins, Kaplan, Miller & Ciresi L.L.P.

# Herbert 1976 Letter

- Large doses of C destroy food B12 when no other substances are present to protect B12.
- Iron, Copper and other substances may protect B12 against destruction by C.
- Acidity or an "artifact" may explain data.
- No mention of folic acid.
- No suggestion to administer B12 and folic acid without antioxidants.

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.



© 2003 Robins, Kaplan, Miller & Ciresi L.L.P.

# Herbert 1981 Letter

- "Mega doses" of C convert food and serum B12 to analogues.
- No suggestion to administer B12 and folic acid without antioxidants.
- No mention of folic acid.

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.



© 2003 Robins, Kaplan, Miller & Ciresi L.L.P.

# Kondo

- B12 analogues formed in the presence of C, Thiamine and Copper.
- "The molecular mechanism by which vitamin C, thiamine, and copper convert [B12] to a number of Cbl analogues is unknown."
- Recommends further investigation.
- No suggestion to administer B12 and folic acid without antioxidants.
- No mention of folic acid.

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.


© 2003 Robins, Kaplan, Miller & Ciresi L.L.P.

# Herbert 1982 Letter

- Multivitamins contain B12 analogues.
- Thiamine, Nicotinamide, C, Copper, E and Iron can damage B12.
- Recommends that manufacturers OMIT B12 from multivitamins, or label to show presence of analogues – the opposite of the patent claims.
- No suggestion to administer B12 and folic acid without antioxidants.
- No mention of folic acid.

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.



© 2003 Robins, Kaplan, Miller & Ciresi L.L.P.

# Herbert Book Chapter

- Mega doses of C may adversely affect food B12.
- C and Iron can damage B12.
- Advises monitoring serum B12 when taking mega doses of C – teaches away.
- No suggestion to administer B12 and folic acid without antioxidants.
- No mention of folic acid.

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.


© 2003 Robins, Kaplan, Miller & Ciresi L.L.P.

# Conclusory Declarations of Obviousness Merely Raise A Fact Dispute, At Best

- Nothing in record as to what is skill in the art.
- No motivation to combine.
- No showing that a combination necessarily has every element.
- Not dealt with teaching away, commercial success.

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.



© 2003 Robins, Kaplan, Miller & Ciresi L.L.P.