**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

UPSHER-SMITH LABORATORIES, INC.

Plaintiff,

Case No. 01-352 ADM/AJB

v.

AMERICAN LABORATORIES, INC.,
METABOLITE LABORATORIES, INC.,
PAN AMERICAN LABORATORIES, L.L.C.,
and PAMLAB, L.L.C.,

Defendants.

---

# PLAINTIFF UPSHER-SMITH LABORATORIES, INC.'S POWERPOINT PRESENTATION USED AT THE DEFENDANTS PAN AMERICAN AND PAMLAB'S MOTIONS FOR SUMMARY JUDGMENT OF INVALIDITY OF '646 PATENT AND FOR ATTORNEY'S FEES HEARING HELD ON APRIL 14, 2004

# Upsher-Smith Laboratories v. Pamlab LLC Civ. No. 01-352 ADM/AJB

## Argument of Plaintiff, Upsher-Smith Laboratories, in Opposition to Pan American's Motions for Summary Judgment of Invalidity of '646 Patent And For Attorneys Fees

Hearing of April 14, 2004

# Plaintiff Upsher-Smith's Requests:

- Reconsideration of Court's adoption of a novel analysis for anticipation in case of a negative limitation.
- Denial of Pending Request for Summary Judgment of '646 and Reconsideration of Summary Judgment of '624 Patent.
- Denial of Motion for Attorneys Fees and Finding that Case is not Exceptional, With Explicit Finding of Good Faith.

# Summary

- PamLab seeks to create a novel rule that reverses the analysis that applies in all other cases.
- Patent office issued the '646 patent over all art that PamLab relies on here.
- PamLab's opinion counsel agrees that there is no existing special exemption for negative limitations.

# PamLab's Opinion Counsel Recognizes the Problem with Pamlab's Argument:

Barry D. LeBlanc, President
September 10, 2003
Page 20

anticipating reference. Continental Can Co. v. Monsanto Co., 948 F.2d 1264, 1268 (Fed. Cir. 1991).

reference must be shown to necessarily contain that limitation. As we have not found any case law relevant to the issue of where a prior art reference is silent with respect to a negative claim limitation, it is unclear whether a court would apply an "inverse" legal

However, a court may hold that a prior art reference which is silent with respect to a negative claim limitation does not expressly disclose that limitation. In that case, the court would likely have to determine what the appropriate standard would be for the inherent disclosure of a negative limitation. With respect to a positive claim limitation, the prior art

reference must be shown to necessarily contain that limitation. As we have not found any case law relevant to the issue of where a prior art reference is silent with respect to a negative claim limitation, it is unclear whether a court would apply an "inverse" legal principle; i.e., where a negative limitation is recited, a challenger must show that the prior art necessarily excludes that limitation. If a court were to hold, in effect, that the burden is on the patent challenger to prove a negative, we are not confident that we would be able to meet that burden based on the Allen patent disclosure. If this high standard were applied, we do not think that one skilled in the art, in making a vitamin composition according to the Allen patent, would necessarily exclude other vitamins or minerals, some of which might include antioxidants. (*See* claim chart, Exhibit C-2.)

Nelc Aff. Exh. 12 – PamLab's opinion of counsel (Merchant & Gould)

# PamLab Need Not Prove A Negative

Pamlab only has to show that someone –anyone –taught the public that "you must not include antioxidants" in the claimed Vitamin B formulations.

And Nobody Did – Until Herbert.

# PamLab's Burden To Show Invalidity is Always High

- Anticipation and Obviousness Are Fact Issues.
- Patent Claims Are Presumed Valid.
- Evidentiary Burden Is "Clear and Convincing" Proof.
- Burden Always Remains On PamLab.

# The PTO Allowed The Claims of The ‘646 Patent over the “European Patent Application”

The PTO Found the European Application Insufficient to Anticipate the Claims of ‘646.

# All Art Relied on By Pamlab Was Considered by the Patent Examiner

FORM 1 of 2

Form PTO-1449 U.S. Department of Commerce Patent and Trademark Office

INFORMATION DISCLOSURE STATEMENT BY APPLICANT

U.S. PATENT DOCUMENTS

| Examiner Initial | | Document Number | Date | Name | Class | Subclass |
|---|---|---|---|---|---|---|
| ZND | | 2,748,054 | 05/1956 | Jurist | 424 | 181 |
| | | 4,053,593 | 10/1977 | Frumoff | 424 | 181 |
| | | 4,940,658 | 07/1990 | Allen et al. | 435 | 4 |
| | | 4,945,083 | 07/1990 | Jansen, Jr. | 514 | 52 |
| | | 5,039,668 | 08/1991 | Colina | 435 | 34 |
| | | 5,064,829 | 11/1991 | Izuhara et al. | 436 | 126 |
| | | 5,135,851 | 08/1992 | Kajander | 424 | 439 |
| | | 5,374,560 | 12/1994 | Allen et al. | 514 | 562 |
| | | 5,494,678 | 02/1996 | Paradissis et al. | 514 | 52 |
| | | 5,545,670 | 08/1996 | Bissbort et al. | 514 | 52 |
| | | 5,563,126 | 10/1996 | Allen et al. | 424 | 682 |
| | | 5,795,873 | 08/1998 | Allen | 514 | 52 |
| | | 5,849,338 | 12/1998 | Richardson et al. | 424 | 682 |
| ZND | | 5,932,624 | 08/1999 | Herbert | | |

FOREIGN PATENT DOCUMENTS

| | Name | Document Number | Date | Country | Class | Subclass |
|---|---|---|---|---|---|---|
| | ZND | 4326675 | 02/1995 | Germany | | |
| | | 4326698 | 03/1995 | Germany | | |
| | | 0595005 | 05/1994 | EPO | | |
| | | 0595006 | 05/1994 | EPO | | |
| | ZND | 95/15750 | 06/1995 | PCT | | |

OTHER DOCUMENTS (Including Author, Title, Date, Pertinent Pages, Etc.)

Refsum, H. et al., "Acute and Long-Term Effects of Hi... on Homocysteine in Plasma and Urine," Cancer Resea... Oct. 1986

"Drug Facts and Comparisons," edited by B.R. Olin et... 63, Feb. 1995

EXAMINER: Initial if citation considered, whether or not citation is in conformance ... line through citation if not in conformance and not considered. Include copy ... communication to applicant.

Z. Davis 11-20-2002

Nelc Aff. Ex. 3 at US 008395

# Inherent Features Must Be "Necessarily Present"

- Inherent anticipation requires that the missing descriptive material is "necessarily present," not merely probably or possibly present, in the prior art. In re Robertson, 169 F.3d 743, 745, 49 USPQ2d 1949, 1950-51 (Fed. Cir. 1999) (citing Continental Can Co. USA, Inc. v. Monsanto Co., 948 F.2d 1264, 1268, 20 USPQ2d 1746, 1749 (Fed. Cir. 1991)).

Trintec Indus., 295 F.3d at 1295 (Fed. Cir. 2002) (emphasis added).

# The European Patent Application Does Not Use "Consisting" in the Exclusive Sense of a United States Patent Claim

In yet another variation of the invention an effervescent tablet is composed consisting of betaine, PL, folate and vitamin B12. Again such a tablet may be bi-layered, one rapidly dissolving layer containing the vitamin B12 component, while the other three components are present in timed release granules, incorporated into the second layer. Alternatively the latter may be present in the core of such a tablet which contains the vitamin B12 component in an outer, rapidly dissolving coating.



e.g. vitamin B12 for elderly vitamin B12-deficient patients.

Applicant has found that PL is more readily absorbed from such parenteral depots than the other two vitamins. This method of application has other distinct advantages. In contrast to PN, PL does not require hepatic activation and the PL entering the circulation from parenteral depots, is directly available for

layer of the tablet containing the B12 component is rapidly dissolved in the stomach while the other layer of the tablet consists of a timed release matrix in such a manner that the PL and folate components are liberated over a period of 3 - 4 hours as stated above. Alternatively, a tablet may be formulated which is coated on the outside with a rapidly dissolving B12 containing layer, such coating covering an inner layer consisting of a timed release matrix containing PL and folate as before.

In yet another variation of the invention an effervescent tablet is composed consisting of betaine, PL, folate and vitamin B12. Again such a tablet may be bi-layered, one rapidly dissolving layer containing the vitamin B12 component, while the other three components are presen't in timed release granules, incorporated into the second layer. Alternatively the latter may be present in the core of such a tablet which contains the vitamin B12 component in an outer, rapidly dissolving coating.

In yet another variation of the invention a powdered mixture (preferably in granulated form) is provided, consisting of one or more or all of the following ingredients:

1) Vitamin B12 in the form of rapidly dissolving granules
2) Choline or betaine in the form of slowly dissolving granules
3) PL in the form of slowly disintegrating granules in such a manner that the total dose is liberated in 4 - 6 h.
4) Folate, also in the form of slowly disintegrating granules.
5) One or more antioxidants.

For the optimum use of the invention it is advisable to monitor the homocysteine levels (total) in human plasma. A method developed by the applicant's research team, suitable for that purpose is described in JB Ubbink, et al J. of Chromatography (1991), 565, 441-446.

The general pharmacologies and toxicologies of the individual ingredients of the pharmaceutical preparations in accordance with the invention are well documented in the art and require no further description. The dosage rates in accordance with the invention are below accepted toxicity limits. It is also generally accepted that the administration of folate is contraindicated in the event of a depressed vitamin B12 status except if vitamin B12 is effectively supplemented at the same time.

The clinical tests hereinafter described reflect in summary the outcome of extensive clinical experiments. In these trials the following procedures were followed:-

a) After thorough analysis and statistical evaluation of total blood homocysteine concentrations in 349 adult caucasian men the cut-off limit between the "normal" homocysteine range and elevated homocysteine levels was set at 16.3 µmol/l. That cut-off limit has been employed for all other evaluations herein described.

b) All homocysteine determinations were performed by the method of' JB Ubbink, et al; J. of Chromatography (1991), 565, 441-446.

c) In comparative trials all patients were ignored who at the commencement day of the trial already showed homocysteine levels below the abovementioned cut-off level.

**Example 1: Results of comparative trials**

Comparative trials were conducted to compare the efficacy of preparations in accordance with the invention with comparable preparations but containing only a single active ingredient and with placebo.

The tablets containing only folate (0,65 mg) respectively only vitamin B6 (2,5 mg PL + 7,5 mg PN) only were formulated as slow release tablets as described in Example 3.

The tablets containing vitamin B12 (20 µg cyanocobalamine) only were formulated as immediate release tablets in the manner described in the same example.





| | |
|---|---|
| Pyridoxine | 10 mg |
| thiamine | 3 mg |
| riboflavine | 4 mg |
| nicotinamide | 20 mg |
| [illegible] | 50 µg |
| [illegible] | 200 mg |
| [illegible] | 1 mg |
| ...ate | 10 mg. |

Ingredients

| A. | Rapid release layer | mg per tablet |
|---|---|---|
| | Cyanocobalamin | 0,02 |
| | Beta-Carotene | 3,0 |
| | Microcrystalline cellulose | 151,3 |
| | Magnesium stearate | 0,7 |
| B. | Slow release layer | |
| | Pyridoxal (as hydrochloride) | 2,5 |
| | Pyridoxine (as hydrochloride) | 7,5 |
| | Folic acid | 0,650 |
| | Calcium hydrogen phosphate | 120,0 |
| | Acrylic resins | 8,0 |
| | Ethyl cellulose | 3,0 |
| | Povidone | 2,5 |
| | Magnesium stearate | 2,7 |

Method

A. Rapid release layer

1. Triturate the cyanocobalamin with some of the microcystalline cellulose.
2. Blend in the Beta-Carotene and the balance of the microcrystalline cellulose.
3. Lubricate the powder with magnesium stearate.



Gullickson Aff. Exh. F at 12, 15.

# Summary

- The Court Should Not Adopt a Special New Hurdle For Patent Applicants.
- The PTO Did Not Find Anticipation.
- PamLab Has offered no expert to contradict the PTO.
- The European Application Does Not Anticipate in Fact.

# Section 285 Attorneys Fees

- The only evidence in the record is that PamLab admits that its products meet all the claim limitations, but PamLab disputes validity.
- Validity is the subject of genuine dispute.
- Pamlab's accusations regarding the course of the litigation are baseless, wrong and inflammatory.

# Litigants such as USL have a right to raise disputes in the Courts

- Patents are presumed valid.
- All of the art Pamlab relies on was considered by the PTO.
- Pamlab seeks to rely on a novel exception to the standard analysis of anticipation.
- USL has had no reason to believe its suit could not succeed.
- Pamlab has not and can not show suit was frivolous and baseless.

# The Limitations At Issue:

"said composition being essentially free of antioxidants" *(all asserted claims)*

# The state of the art was to do everything possible to include antioxidants in combination vitamins.

The following additional remarks are to clarify the previously provided remarks and to advance the prosecution by narrowing the issues.

As indicated in the prior response the claimed compositions are useful for of heart disease, which treatment may be defined as the prevention of heart slowing of the progression of heart disease. In such regard, the treatment's ben from the claimed compositions can be significantly diminished by the inclusion vitamins or minerals in the compositions. In fact, the components of the comp for such treatment effects can be significantly damaged by the presence of additi or minerals in the compositions. Thus, eliminating other multivitamin ingredients minerals as excluded by the claims), antioxidants, biological supplements such as acids would not have been suggested to one of ordinary skill in the art prior invention.

While the Office Action has taken a position that perhaps it would be simpl such other vitamins and minerals from vitamin compositions to result in compositions. However, there is no motivation in the art to make such elimin provide the present useful compositions. In fact, the clear commercial motivatio art would be to produce as close to a single-dose multivitamin and mineral s possible. Such is readily apparent in that patients who take multivitamins clearly a one dose vitamin supplement and be done with it. However, such additional s inactivate the present compositions or counter-act their effects.

Prior to the present invention, there was no motivation for providing the presently claimed compositions. Further, the beneficial effects of such an elimination were not know in the prior art cited by the Examiner.

While the Office Action has taken a position that perhaps it would be simple to eliminate such other vitamins and minerals from vitamin compositions to result in the present compositions. However, there is no motivation in the art to make such eliminations and to provide the present useful compositions. In fact, the clear commercial motivation in the prior art would be to produce as close to a single-dose multivitamin and mineral supplement as possible. Such is readily apparent in that patients who take multivitamins clearly prefer to take a one dose vitamin supplement and be done with it. However, such additional substances can inactivate the present compositions or counter-act their effects.

'624 FH Paper No. 4, Holdreith Aff. Exh. 4 at p. 3.

# The B12 Art was a crowded art by 1995.

Increments in knowledge are very specific.

# Practitioners did not appreciate the need to avoid antioxidants.

- PamLab has been unable to show the Court <u>any</u> actual commercial product or practice prior to Herbert that is a B12 and folic acid vitamin combination free of antioxidants.

# The "Professors" did not appreciate the need to avoid antioxidants.

- They don't so much as mention antioxidants in their patents.
- "comprising" specifically allows antioxidants.

# The Art Taught Away:

- Herbert 1976 letter: Iron, Copper and other substances may protect B12 against destruction by C.
- Herbert 1982 letter: OMIT B12 from multivitamins to prevent analogues.
- Herbert Book Chapter: monitor serum B12 when taking mega doses of C.
- 1994 European Patent Application: preferable to include antioxidants, nutrient minerals.

# Even Dr. Herbert Suggested Omitting B12 and Keeping C Prior To His Invention:

- "[W]e recommend that manufacturers either voluntarily omit vitamin B12 from their vitamin/mineral preparations or indicate on their labeling the presence of vitamin B12 analogues."

Herbert et al., Multivitamin/Mineral Food Supplements . . ., Letter to the Ed. N. Eng. J. Med. v. 307 No. 4 (1982), part of PamLab's Exh. E.

# Why? . . .

- Because no-one working in the art understood prior to Dr. Herbert's patent that a folic acid and B12 combination vitamin should omit antioxidants!
- [And that they should omit nutrient minerals, amino acid supplements, and antimicrobial agents.]

**VICTOR HERBERT, M.D., J.D., M.A.C.P., F.R.S.M. (London)**



Professor of Medicine and Chair, Committee to Strengthen Nutrition, Mount Sinai-New York University Health System, NYC; Chief, Mount Sinai Nutrition Center and Hematology and Nutrition Research Laboratory at the Department of Veterans' Affairs Medical Center, Bronx, NY.

A native of New York, Dr. Herbert received his B.S. in chemistry (1948), M.D.(1952) and J.D.(1974) all at Columbia Univ. After internship at Walter Reed Army Medical Center, he undertook his teaching, research, and patient care career in hematology/oncology, nutrition and internal medicine, with strong emphasis on biochemistry, physiology, and clinical pathology, with voluntary Army service in four wars (WW II, Korea, Vietnam, Persian Gulf)(re-retiring as a Green Beret Lt. Col. after the Gulf War). On the full-time medical school faculties of Einstein, Mount Sinai, Harvard, Columbia, SUNY-Brooklyn (formerly SUNY-Downstate), and Hahnemann, before returning in 1985 to Mount Sinai.

A member of numerous scientific societies, he has published over 850 scientific papers, sits on the editorial boards of 6 scientific journals, sits on the WHO-FAO Committees on Nutritional Anemias and on Dietary Requirements, lectures at medical institutions across the U.S. and around the world, is a frequent guest on many national television shows. His many awards for nutrition research include the 1972 McCollum Award and the 1986 Robert H. Herman Award (both from the American Society for Clinical Nutrition), the 1978 Middleton Award (highest award for medical research given by the US Veterans' Administration), the FDA Commissioner's Special Citation in 1984 for "outstanding and consistent contributions against the proliferation of nutrition quackery to the American consumer," the 1988 Honorary Membership Award and Plaque from the American Dietetic Association, and the 1993 American Institute of Nutrition's Lifetime Fellow Award for his "nutrition research, teaching and unique contribution to the

**Dr. Herbert added to medical knowledge by teaching, contrary to existing thinking, that damaging antioxidants must be omitted when administering a combination vitamin including folic acid and B12.**

# "Essential Freedom from Antioxidants" is Not Shown In PamLab's Publications By Clear and Convincing Evidence

Neither is freedom from antimicrobial agents, amino acid supplements, and nutrient minerals.

# PanLab's Publications Do Not Describe The Problem

- The Allen "Professors'" Patents make NO MENTION of antioxidants at all!
- Other references do not identify the need to administer folic acid and B12 in the absence of antioxidants.

# PamLab's Publications Did Not Describe The Solution

- Most of the references do not deal with a folic acid and Vitamin B12 combination at all.

# PamLab's Publications Do Not Describe The Solution

- Many of the publications teach away by suggesting:
  - Balancing vitamin therapy – moderate doses of C.
  - Omitting B12 from multiple vitamins.
  - Monitoring for B deficiency.
  - Adding protective mechanisms to protect the B.

See In re Gurley, 27 F.3d 551 (Fed. Cir. 1994).

# The "Professors' Patents"

- Do not so much as mention antioxidants.
- The Professors do not describe any experiment in which they actually administered vitamins of any kind in any combination to anyone.
- "Comprising" permits antioxidants, nutrient minerals, antimicrobial agents, amino acid supplements.

# European Patent Application

- The European Patent Application teaches away by specifically recommending the use of antioxidants with B12 and folic acid: e.g., “one or more of the anti-oxidants are preferably included” p. 9 lines 44-45 and passim.
- The “comprising/containing” language permits antioxidants – rather than necessarily excluding them.

claim limitation"); *Kropa v. Robie*, 187 F.2d at 152, 88 USPQ2d at 480-81 (preamble is not a limitation where claim is directed to a product and the preamble merely recites a property inherent in an old product defined by the remainder of the claim); *STX LLC. v. Brine*, 211 F.3d 588, 591, 54 USPQ2d 1347, 1350 (Fed. Cir. 2000) (holding that the preamble phrase "which provides improved playing and handling characteristics" in a claim drawn to a head for a lacrosse stick was not a claim limitation). >Compare *In re Cruciferous Sprout Litig.*, 301 F.3d 1343, 1346-48, 64 USPQ2d 1202, 1204-05 (Fed. Cir. 2002) (A claim at issue was directed to a method of preparing a food rich in glucosinolates wherein cruciferous sprouts are harvested prior to the 2-leaf stage. The court held that the preamble phrase "rich in glucosinolates" helps define the claimed invention, as evidenced by the specification and prosecution history, and thus is a limitation of the claim (although the claim was anticipated by prior art that produced sprouts inherently "rich in glucosinolates").<

During examination, statements in the preamble reciting the purpose or intended use of the claimed invention must be evaluated to determine whether the recited purpose or intended use results in a structural difference (or, in the case of process claims, manipulative difference) between the claimed invention and the prior art. If so, the recitation serves to limit the claim. See, e.g., *In re Otto*, 312 F.2d 937, 938, 136 USPQ 458, 459 (CCPA 1963) (The claims were directed to a core member for hair curlers and a process of making a core member for hair curlers. Court held that the intended use of hair curling was of no significance to the structure and process of making.); *In re Sinex*, 309 F.2d 488, 492, 135 USPQ 302, 305 (CCPA 1962) (statement of intended use in an apparatus claim did not distinguish over the prior art apparatus). If a prior art structure is capable of performing the intended use as recited in the preamble, then it meets the claim. See, e.g., *In re Schreiber*, 128 F.3d 1473, 1477, 44 USPQ2d 1429, 1431 (Fed. Cir. 1997) (anticipation rejection affirmed based on Board's factual finding that the reference dispenser (a spout disclosed as useful for purposes such as dispensing oil from an oil can) would be capable of dispensing popcorn in the manner set forth in appellant's claim 1 (a dispensing top for dispensing popcorn in a specified

manner)) and cases cited therein. See also MPEP § 2112 - § 2112.02.

### 2111.03 Transitional Phrase

The transitional phrases "comprisi
essentially of" and "consisting of" de
a claim with respect to what unrecited
ponents or steps, if any, are excluded
of the claim.

The transitional term "comprising
onymous with "including," "containi
terized by," is inclusive or open-end
exclude additional, unrecited elem
steps. See, e.g., *Genentech, Inc. v*
112 F.3d 495, 501, 42 USPQ2d 1608
1997) ("Comprising" is a term of a
language which means that the nam
essential, but other elements may be
form a construct within the scope
*Moleculon Research Corp. v. CBS,*
1261, 229 USPQ 805 (Fed. Cir. 198
656 F.2d 679, 686, 210 USPQ 795, 80
*Ex parte Davis*, 80 USPQ 448, 450
("comprising" leaves "the claim ope
sion of unspecified ingredients
amounts").

The transitional phrase "consisti
any element, step, or ingredient not
claim. *In re Gray*, 53 F.2d 520, 11 U
1931); *Ex parte Davis*, 80 USPQ 448
1948) ("consisting of" defined as "c
to the inclusion of materials other th
except for impurities ordinarily a
with."). A claim which depends fro
"consists of" the recited elements or
an element or steps. When the phra
appears in a clause of the body of a c
immediately following the preamble,
element set forth in that clause; other
excluded from the claim as a whol
*Demag Corp. v. Engineered Meta*
793 F.2d 1279, 230 USPQ 45 (Fed. C

The transitional phrase "consisti
limits the scope of a claim to the sp
or steps "and those that do not ma
basic and novel characteristic(s)" of the claimed invention. *In re Herz*, 537 F.2d 549, 551-52, 190 USPQ 461, 463 (CCPA 1976) (emphasis in origi-



The transitional term "comprising", which is synonymous with "including," "containing," or "characterized by," is inclusive or open-ended and does not exclude additional, unrecited elements or method steps. See, e.g., *Genentech, Inc. v. Chiron Corp.*, 112 F.3d 495, 501, 42 USPQ2d 1608, 1613 (Fed. Cir. 1997) ("Comprising" is a term of art used in claim language which means that the named elements are essential, but other elements may be added and still form a construct within the scope of the claim.); *Moleculon Research Corp. v. CBS, Inc.*, 793 F.2d 1261, 229 USPQ 805 (Fed. Cir. 1986); *In re Baxter*, 656 F.2d 679, 686, 210 USPQ 795, 803 (CCPA 1981); *Ex parte Davis*, 80 USPQ 448, 450 (Bd. App. 1948) ("comprising" leaves "the claim open for the inclusion of unspecified ingredients even in major amounts").

MPEP 2111.03

(19) Europäisches Patentamt
European Patent Office
Office européen des brevets

(11) Publication number: **0 595 005 A1**

## (12) EUROPEAN PATENT APPLICATION

(21) Application number: 93114762.3

(22) Date of filing: 14.09.93

(51) Int. Cl.5: **A61K 31/68**, //(A61K31/68, 31:505,31:44)

EP 0 595 005

Rank Xerox (UK) Business Services



cysteine levels (perhaps due to genetic abnormalities, or for other reasons) in whom, during treatment, homocysteine levels decline slowly to normality over a long period (e.g. weeks). Homocysteine-induced oxidation of cholesterol can be suppressed by means of antioxidants (e.g. β-carotene, vitamin E, vitamin C,coenzyme Q, etc.). In this respect, it has surprisingly been found that pyridoxal (PL) itself has anti-oxidant (anti-free radical) activity. Thus when used as provided for in the invention, PL serves a variety of purposes as outlined above, including that of an anti-oxidant.

However, particularly in severe cases of homocysteinuria (e.g. due to genetic disorder) it is advantageous to include one or more powerful anti-oxidants drawn from the list of compounds mentioned above.

In such cases it may also be necessary to administer choline or betaine as herein provided for. Thus, according to yet another aspect of the invention, a pharmaceutical formulation comprising vitamin B6 (preferably at least in part in the form of pyridoxal) folic acid and vitamin B12 in combination with one or

| | | | |
|---|---|---|---|
| Coenzyme Q10 | 10-100 | 15-50 | 20 |

**In different formulations, one or more of the anti-oxidants are preferably included with the first three compounds.**

All such formulations are preferably formulated in such a manner that both a rapid release phase and a retarded release phase is present as previously outlined. The anti-oxidant component(s) may be present in either phase.

| | | | |
|---|---|---|---|
| Ascorbic acid | 30-1000 | 100-700 | 500 |
| Coenzyme Q10 | 10-100 | 15-50 | 20 |

In different formulations, one or more of the anti-oxidants are preferably included with the first three compounds.

All such formulations are preferably formulated in such a manner that both a rapid release phase and a retarded release phase is present as previously outlined. The anti-oxidant component(s) may be present in either phase.

The pharmaceutical compositions are not only to be used in the treatment of raised homocysteine levels induced nutritionally, genetically or as a result of a variety of diseases, but also in those cases where the elevated homocysteine levels are drug induced or in combination with a B6 or folate antagonistic drug, which has a tendency to raise homocysteine levels. Examples of other situations in which blood homocysteine levels may be elevated are the following: post-menopausal women, liver failure, leukemia, other cancers, chronic renal failure. Slow-release formulation of PL prevents excessive liver oxidation to the biologically inactive pyridoxic acid.

# Macek

- Crystalline Vitamin B12 “incompatible” with Vitamin C after heating.
- No suggestion to administer B12 and folic acid without antioxidants.
- Mechanism not identified – no suggestion it is an antioxidant reaction.
- No mention of folic acid.
- B12 stable in a pH adjusted solution – suggests acidity of Vitamin C may cause reaction.

# Herbert 1974 Letter

- Reports large doses of vitamin C destroy B12 from food, which is less stable than crystalline B.
- No mention of folic acid.
- No suggestion to administer B12 and folic acid without antioxidants.
- States Iron may protect B12 from C.
- States there is no destruction of B12 in food by RDA of C

# Herbert 1976 Letter

- Large doses of C destroy food B12 when no other substances are present to protect B12.
- Iron, Copper and other substances may protect B12 against destruction by C.
- Acidity or an “artifact” may explain data.
- No mention of folic acid.
- No suggestion to administer B12 and folic acid without antioxidants.

# Herbert 1981 Letter

- "Mega doses" of C convert food and serum B12 to analogues.
- No suggestion to administer B12 and folic acid without antioxidants.
- No mention of folic acid.

# Kondo

- B12 analogues formed in the presence of C, Thiamine and Copper.
- “The molecular mechanism by which vitamin C, thiamine, and copper convert [B12] to a number of Cbl analogues is unknown.”
- Recommends further investigation.
- No suggestion to administer B12 and folic acid without antioxidants.
- No mention of folic acid.

# Herbert 1982 Letter

- Multivitamins contain B12 analogues.
- Thiamine, Nicotinamide, C, Copper, E and Iron can damage B12.
- Recommends that manufacturers <u>OMIT B12</u> from multivitamins, or label to show presence of analogues – the opposite of the patent claims.
- No suggestion to administer B12 and folic acid without antioxidants.
- No mention of folic acid.

# Herbert Book Chapter

- Mega doses of C may adversely affect food B12.
- C and Iron can damage B12.
- Advises monitoring serum B12 when taking mega doses of C – teaches away.
- No suggestion to administer B12 and folic acid without antioxidants.
- No mention of folic acid.

# Conclusory Declarations of Obviousness Merely Raise A Fact Dispute, At Best

- Nothing in record as to what is skill in the art.
- No motivation to combine.
- No showing that a combination necessarily has every element.
- Does not deal with teaching away, commercial success.